UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUANA MARIA MEDRANO PEREZ,<br>Petitioner,<br>v.<br>MARKWAYNE MULLIN, et al.<br>Respondents. | Case No. 5:26-cv-03176 ADS<br><br>ORDER GRANTING PETITION |

## I. INTRODUCTION

Petitioner Juana Maria Medrano Perez filed a Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241, seeking immediate release from immigration detention, among other relief. (Dkt. No. 1.) Respondents filed an Answer to the Petition. (Dkt. No. 8.) Petitioner filed a Reply in support of the Petition. (Dkt. No. 10.) For the reasons discussed below, the Petition is granted.

## II. FACTUAL BACKGROUND

Petitioner alleges she fled Guatemala in 2023 to escape persecution based on her sexual orientation. (Dkt. No. 1-1, Declaration of Carrie Leroy ("Leroy Decl.") ¶ 4.) Petitioner applied for asylum and was paroled into the United States on April 16, 2024. (Id.) Upon her parole, Petitioner alleges she was granted employment authorization and began working as a housekeeper at a Mariott Hotel. (Id. ¶ 7.) Petitioner also reunited with her close U.S. citizen family members, including her aunt, stepmother, and cousin. (Id.) Petitioner later found out that the immigration lawyer she hired was a con artist and that no asylum application was ever filed. (Id. ¶ 7.) Petitioner was detained at an immigration court hearing on June 5, 2025 and is currently in regular removal proceedings. (Id. ¶¶ 10-11.) Petitioner later filed an asylum application pro se, which is currently pending with the Board of Immigration Appeals ("BIA"). (Id. ¶¶ 12-14.) Petitioner alleges that she complied with all the conditions of her release on parole and that she has no criminal history. (Id. ¶¶ 12-14.) Petitioner received a Rodriguez bond hearing on March 10, 2026, in which the Immigration Judge ("IJ") denied bond based on a finding that Petitioner was a flight risk. (Id. ¶ 18; Dkt. 1-2, Ex. F.) The attorney who represented Petitioner at the bond hearing alleges that the IJ designated Petitioner as a flight risk solely because he concluded that she has limited options for immigration relief in the United States. (Dkt. No. 1-3, Declaration of Catherine Ann Roe ("Roe Decl.") ¶ 4.) Petitioner further alleges that she was never afforded a pre-deprivation hearing or notice to contest that she was a flight risk or danger to others. (Leroy Decl. ¶ 19.)

## III. SUMMARY OF PETITION, ANSWER, AND REPLY

Petitioner asserts the following grounds for relief: (1) a substantive due process violation because her detention has no relation to a legitimate government purpose; (2) a procedural due process violation because of re-detention without pre-deprivation notice and a hearing; (3) a violation of the Fourth Amendment because of an unlawful arrest; (4) a violation of the Administrative Procedures Act because Petitioner's re-detention was without individualized basis; and (5) a violation of the Immigration and Nationality Act because the bond hearing was post-deprivation and otherwise inadequate. (Dkt. No. 1 at 28-38.) Petitioner seeks immediate release from custody without any monitoring, the return of her personal belongings, an injunction prohibiting Petitioner's removal to a third country absent a pre-removal hearing, and an injunction preventing Respondents from re-detaining Petitioner without pre-deprivation notice and a hearing. (Dkt. No. 1 at 38-39.) Petitioner also requests declaratory relief. (Dkt. No. 1 at 38.)

In the Answer, Respondents contend that immigration officials exercised their discretion to re-detain Petitioner during the pending removal proceedings. (Dkt. No. 8 at 4-5.) Respondents also argue that Petitioner failed to exhaust administrative remedies by not waiting for the resolution of her appeal of the bond decision with the BIA. (Id. at 4.) Respondents argue that the Court lacks jurisdiction to review immigration bond decisions under 8 U.S.C. § 1226(e) and that the Mathews factors nevertheless do not support a finding of a due process violation. (Id. at 5-6.)

In the Reply, Petitioner argues that the bond hearing should never have been required because she was entitled to pre-deprivation notice and a hearing. (Dkt. 10 at 2.) Petitioner further argues that exhaustion should be waived because there is no other

forum where Petitioner can raise constitutional claims. (Id. at 5-6.) Petitioner further argues that federal courts have jurisdiction to review bond denials. (Id. at 7.) Petitioner contends that Respondents' answer is silent on the merits of Petitioner's claim regarding the sufficiency of the bond hearing. (Id. at 8.)

## IV. DISCUSSION

### A. Bond Denial

The Petition asserts, in part, that Petitioner's procedural due process rights were violated by a constitutionally inadequate bond hearing. (Dkt. No. 1 at 36-38.) The Supreme Court has clarified the boundaries of judicial review in the immigration context by explaining that "[t]he application of a statutory legal standard . . . to an established set of facts is a quintessential mixed question of law and fact" and is reviewable. Wilkinson v. Garland, 601 U.S. 209, 212 (2024). Following Wilkinson, the Ninth Circuit has held that an immigration judge's determination that a detainee poses a danger to the community or a flight risk is a mixed question of law that may be reviewed for abuse of discretion. See Martinez v. Clark, 124 F.4th 775, 783 (9th Cir. 2024) ("Wilkinson compels the conclusion that application of the 'dangerousness' standard is a reviewable mixed question."); see also Singh v. Holder, 638 F.3d 1196, 1202, 1205 (9th Cir. 2011) (holding that district courts have jurisdiction to review errors in bond hearings, including the determination that a noncitizen is a flight risk) Under abuse of discretion review, the Court "cannot reweigh evidence," but instead determines whether the immigration judge "applied the correct legal standard." Martinez, 124 F.4th at 785 (internal quotation marks omitted).

The Ninth Circuit has explained that when assessing whether a noncitizen "is a danger to the community or a risk of flight," an immigration judge may consider the following factors:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

Martinez, 124 F.4th at 783 (internal quotation marks omitted). An immigration judge has "broad discretion to weigh the listed factors and add any factors not mentioned or discount those that are less probative." Id. at 784. However, the Ninth Circuit has also explained that an immigration judge "abuses its discretion when it fails to consider and address in its entirety the evidence submitted by a petitioner and to issue a decision that fully explains the reasons for [its decision]." Franco-Rosendo v. Gonzales, 454 F.3d 965, 966 (9th Cir. 2006) (internal quotation marks omitted); see also Barrera-Leyva v. Immigr. and Naturalization Serv., 653 F.2d 379, 380 (9th Cir. 1981) (stating that the immigration judge abused its discretion by "fail[ing] to consider all of the relevant factors").

Courts have also found that immigration judges must consider alternative conditions to confinement if their concern is a risk of flight. See Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by

a lesser bond or alternative conditions."); see also Lopez v. Casey, No. 26-CV-04949-RFL, 2026 WL 2741864, at *2 (S.D. Cal. Sept. 16, 2026) ("[D]ue process requires IJs to consider alternative conditions to ameliorate risk of flight."). When a bond hearing is conducted under a "clear and convincing" standard, the fact that a noncitizen has not prevailed in their removal proceedings is not alone sufficient for finding a noncitizen to be a flight risk justifying denial of bond. See Singh, 638 F.3d at 1205 ("[The petitioner] had already been ordered removed by a final, administrative order, diminishing his incentive to appear for further removal proceedings. Although this is a relevant factor in the calculus, it alone does not constitute clear and convincing evidence that [the petitioner] presented a flight risk justifying denial of bond.")

Petitioner alleges that her due process rights were violated because of an improper bond hearing. (Dkt. No. 1 at 31.) Petitioner received a Rodriguez hearing where the government was required to prove, by clear and convincing evidence, that Petitioner is a flight risk or danger to the community.[1] (Dkt. 1-2, Ex. F.) Petitioner alleges and Respondents do not dispute that the IJ designated Petitioner as a flight risk solely because he concluded that she has limited options for immigration relief in the United States. (Roe Decl. ¶¶ 4, 6.) Under Singh, the IJ's finding that Petitioner will not prevail in her removal proceedings is a relevant consideration, but it is not sufficient for finding Petitioner to be a flight risk under the "clear and convincing" evidence standard.

[1] See Rodriguez v. Robbins, 715 F.3d 1127, 1131 (9th Cir. 2013) ("Under the preliminary injunction, at the conclusion of each bond hearing, the Immigration Judge ('IJ') shall release each Subclass member on reasonable conditions of supervision, including electronic monitoring if necessary, unless the government shows by clear and convincing evidence that continued detention is justified based on his or her danger to the community or risk of flight." (internal quotation marks omitted)).

See Singh, 638 F.3d at 1205 (holding that the existence of a final order of removal is insufficient for finding the petitioner to be a flight risk). There is also no indication that the IJ considered alternative conditions to detention. (Roe Decl. ¶¶ 4, 6; Dkt. 1-2, Ex. F.) The IJ, in denying bond based on a finding that Petitioner was a flight risk, should have considered alternative conditions to detention. See Hernandez, 872 F.3d at 994 ("[T]the government has no legitimate interest in detaining individuals. . .whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions.") In the bond hearing, Petitioner provided a letter of support from a United States sponsor and explained that she was appealing the denial of her asylum claim. (Roe Decl. ¶ 4.) Petitioner had also complied with all the conditions of her prior release on parole and she has no criminal history. (Leroy Decl. ¶¶ 12-14.) On these facts, the Court finds that Petitioner's due process rights were violated because the IJ abused his discretion in applying the "clear and convincing" legal standard.[2]

---

[2] To the extent Respondents claim that administrative remedies are not exhausted until Petitioner's appeal with the BIA concludes, exhaustion in this context is prudential. See Hernandez, 872 F.3d at 988 ("The exhaustion requirement is prudential, rather than jurisdictional, for habeas claims." (citations omitted)). Exhaustion may be waived when irreparable injury would otherwise result. Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004) (noting exceptions where "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." (citation omitted)). Here, Petitioner has alleged that she "is experiencing extreme hardship as result of her prolonged detention" and that BIA appeals take many months to be adjudicated. (Leroy Decl. ¶15; Roe Decl. ¶ 8.) As discussed, there is uncontested evidence that supports that Petitioner will likely be released in the event of a proper bond hearing. Petitioner has been detained since June 5, 2025. (Leroy Decl. ¶¶ 10-11.) These considerations warrant a waiver of the exhaustion requirement in this particular case. See Rodriguez v. Bostock, 779 F. Supp. 3d 1239, 1252-53 (W.D. Wash. 2025) (finding irreparably injury justified waiving exhaustion in part because of the length of the petitioner's detention, the long wait for bond appeal decisions, and the likelihood of the petitioner's success in a bond hearing); see also Soriano v. Hernandez, 830 F. Supp. 3d 1071, 1079 (W.D. Wash. 2026) (finding irreparably injury justified waiving exhaustion because of the

**B. <u>Relief</u>**

The remaining question before the Court is the appropriate relief for Respondents' violation. "[H]abeas corpus is, at its core, an equitable remedy." Schlup v. Delo, 513 U.S. 298, 319 (1995). Accordingly, courts have "broad discretion in conditioning a judgment granting habeas relief." Hilton v. Braunskill, 481 U.S. 770, 775 (1987). In habeas, "[t]he typical remedy is, of course, release." Munaf v. Geren, 553 U.S. 674, (2008). Petitioner complied with all the conditions of her prior release on parole and has no criminal history. (Leroy Decl. ¶¶ 12-14.) Petitioner's prior release on parole likely entitled her to a pre-deprivation hearing. See E-M- v. Hermosillo, No. 3:25-CV-1083-SI, 2026 WL 883776, at *6 (D. Or. Mar. 31, 2026) (stating there are "overwhelming authorities holding that after a noncitizen has been released on conditional parole, due process requires notice and a pre-deprivation hearing"). Petitioner has not had a constitutionally adequate bond hearing, despite being detained since June 5, 2025. (Leroy Decl. ¶¶ 10-11.) Under these circumstances, the Court concludes immediate release is the appropriate remedy.[3] See Soriano, 830 F. Supp. 3d at 1081 (holding that release was the appropriate remedy when the immigration judge abused his discretion in denying bond); see also Hasratyan v. Bondi, No. 5:26-CV-00210-MCS-ADS, 2026 WL 288909, at *4 (C.D. Cal. Feb. 2, 2026) (holding that because the process the petitioner received at her bond hearing before the immigration judge was deficient, "[a]ny remedy to that deficiency by way of review by the Board of

---

lengthy delays inherent in BIA appeals).

[3] Because the Court finds Petitioner is entitled to relief on this basis, the Court does not reach the other grounds asserted.

Immigration Appeals is doubtlessly months away. Accordingly, the post-detention process Petitioner received and will receive is no substitute for the pre-detention process she was owed"); see also Aguirre Solis v. Noem, 2026 WL 396432, at *7 (D. Nev. Feb. 12, 2026) ("[T]he Court, in its equitable discretion, finds the unique harms suffered by Petitioner because of the government's violation of his due process rights require the remedy of immediate release from custody."). However, to the extent Petitioner seeks an injunction against future detention or third country removal, the Court does not consider it necessary to provide additional relief addressing a hypothetical possibility that Respondents may re-detain Petitioner or remove her to a third country. See Meza-Hernandez v. Marin, No. 5:26-CV-00813-MCS-JDE, 2026 WL 1333740, at *1 (C.D. Cal. May 13, 2026) ("[T]he Court will not grant habeas relief that exceeds the scope of the claims in the petition or is based on speculation about what might happen after

///

Petitioner's release.”).

## V. CONCLUSION

Accordingly, IT IS HEREBY ORDERED:

1. The Petition is granted;

2. Petitioner Juana Maria Medrano Perez (A# 244-490-085) must be immediately released from immigration detention;

3. Respondents must immediately return Petitioner’s personal belongings to her, including her identification cards, documents, and other items confiscated upon her detention; and

4. Judgment shall be entered accordingly.

Dated: September 29, 2026

/s/ Autumn D. Spaeth
THE HONORABLE AUTUMN D. SPAETH
United States Magistrate Judge